Your Honor, my name is Doug Shull. I'm appearing on behalf of Mr. Goodrich in this case. May it please the Court. I note you're appointed under the Criminal Justice Act and the Court appreciates your help. Thank you, Your Honor, I appreciate that. I think a quick synopsis of the facts in this case or just kind of a brief procedural history is kind of important just to understand where we're starting from. Back in March 3, 2010, Mr. Goodrich was indicted for his role in a conspiracy to distribute over 50 grams of crack cocaine. Following that, as the Court I'm sure is aware, the Fair Sentencing Act became effective on August 3, 2010, and subsequent to that, Mr. Goodrich was indicted on 12-14 of 2011 for maintaining the premises of a drug house, which was essentially bore out of the same facts of the conspiracy, the indictment did allege I think 13 additional days or so, but both indictments were approximate and inclusive, and so everything comes basically out of the same set of facts. Subsequent to the effective date of the Fair Sentencing Act, Mr. Goodrich was convicted in front of two separate district courts for both of these offenses, and subsequent to his conviction was sentenced following the Supreme Court's acknowledgment that the Fair Sentencing Act applied to cases in which the offenses occurred prior to its enactment, but for defendants who were sentenced after that date. As we look at Goodrich 1, I guess just a synopsis of my three arguments is, you know, first of all, I made the argument that the district court in Goodrich 1 erred by not applying the Fair Sentencing Act, not acknowledging that at all at his sentencing hearing, given the fact that the Supreme Court had made its decision a month prior to even his sentencing date, and that led to procedural errors in calculating Mr. Goodrich's correct guideline ranges, which essentially gave him a guideline range of 37, whereas absent the guideline errors, he would have, I believe, had a guideline range of 34 instead of 37 as a career offender, and 34 instead of a 36 due to the specific offense characteristics that were also misapplied due to the court's incorrect usage of the incorrect guideline manual. And then third, because of the closely related nature of these two cases, I argued that the procedural error in Goodrich 1 impacted the substantive ability of the court in Goodrich 2, who was a separate district judge, to sentence Mr. Goodrich under the guidelines and under the 3553 factors, because although it's not in the record, I'm sure that would be a fact that the court was aware of, and obviously both courts sentenced Mr. Goodrich to the exact identical sentences. That being said, then it's important to look exactly at what the district court in Goodrich 1 made as its specific findings. And the specific findings that the district court made is there is no need to precisely ascertain the full amount of drugs involved in this conspiracy. The evidence establishes that the amount easily exceeds 50 grams. And so by looking at the district court's words, it's clear what the district court's findings are there, is that the finding is that it is in excess of 50 grams and that there's no need to make any finding in excess of that. Now, the government in its brief wants to go back and argue that you should substitute its judgment based upon some of the factual findings that were made earlier on in the court's order. However, that would be contrary to reading what the court is saying right here, where it says it is unnecessary to make any finding that it is above 50 grams. And so this is necessary. This is Higgins. I mean, we're talking about does Higgins apply, right? I think we could be talking about that, but I guess I can't really answer that question right now. I guess it's... Well, in Higgins, we said no plain error. Yeah. Because the finding of 280 plus gram conspiracy beyond a reasonable doubt results in the same statutory maximum. And you had the same indefinite initial finding, didn't you? Yeah. I think, and if my recollection is correct, Higgins... If that's true. Well, Higgins says at the bench trial, the district court explicitly found beyond a reasonable doubt that the conspiracy involved in excess of 5,000 grams of crack. And I thought your argument was that it's at least debatable here whether the judge explicitly found more than 280. Thank you, Judge. And you say, well, all he actually found was that it exceeded 50. Right? Isn't that your argument? That is what I'm arguing. But what about the previous sentences? That's where the government seems to hang its hat. The judge said, he made the comments about every other day, the eight ball every other day, and the 405 grams in undercover transactions. And then he said, there's no need to precisely ascertain the full amount of drugs involved. The evidence establishes the amount exceeds 50. Why shouldn't that be read as a finding that there was 405 in undercover transactions and there was an eight ball every other day? Uh, and I don't need to go any further because that's at least 50. In which case it would also be at least 280, we could say on appeal. Yeah. What about that? I think that's what it comes, arguably, that's what it comes down to. So what do you say to that? And I think that is arguably what it comes down to where I get uncomfortable with that is based upon the language of the judge, because I don't believe this is a situation where we're looking at where, where, where the district court came up with a finding that is 405 grams or something like that, where, where we're trying to justify from the record and other facts that he said that, that, that the amount is at least that amount. You want to read it to mean, well, there's testimony about 405 and there's testimony out of eight ball every other day, and that's at least 50. So that's all I needed. Right. That's how you are. And where the rubber hits the ground and where, where the, where I'm where the government's asking me to make the decision as a 50 grams, you know, as we indicated, the fair sentencing act, you know, had been, had been effective, um, I think for 18 to 20 months prior to Mr. Goodrich's trial. And somebody objected the trial and said, no, I was at the trial. It hadn't been made retroactive. It hadn't been made retroactive prior to trial. Correct. So the judge wasn't on notice then that he needed to find the 280. Correct. But the, but obviously that, that was an open question still. Yeah. And so, uh, so what do you think, what do you want us to do? You want him to be resentenced at the lower, uh, guideline range based on the lower mandatory, uh, I mean the lower statutory maximum, or do you want to judge a new trial? What is exactly? The only thing I'm at, the only thing I asked for was that it be reverse remanded for sentencing because, and this is probably the flip side of that is, you know, as I came. Well, it was a bench trial. Would the judge be able to go back and say, I find beyond reasonable doubt that it was 280 or more? Um, that wasn't what I was asking for. Well, that's what I mean. What are you asking for? I was asking that it be reverse remanded just for resentencing. Well, what I just said would be part of a resentencing. So I don't understand what you mean. Okay. And so what I, the way I would look at this and I guess the way I was looking at this is, this is actually a below guideline sentence in Goodrich one. And so, but based upon the fair sentencing act error, and then the guide, the later guidelines errors, which was the career offender that because he, because he had the higher, higher statutory maximum, his career offender level was raised. And then using the wrong manual, the judge, when they were going through the correct procedure and sentencing started off with a sentencing range that, uh, I believe it was at least four or five, six, seven years. I have it in my brief. I'm sure exactly. What do you want us to do? I want you to send it back and give the judge the opportunity to start at the right, at the right guideline range. And you want us to order that he must start at that lower range, or is he allowed to make new findings in light of the amendment to the statute? That's what I'm trying to figure out. I would not ask for that. Um, but because, and I guess that's what he's already made the findings as far as, as, uh, uh, by preponderance of the evidence of the 346 grams, that's the second prong of the government's argument. And so, you know, procedurally, I would say that that was that it wants to go back. But if you're asking what I would like, well, I guess I'm asking why shouldn't the judge be allowed to make new findings if we send it back? And I don't know that there's any reason that there's no reason right now that I'm going to say that I guess he couldn't other than it is a finding that is on the, I mean, I guess that's where the error comes from. And so in order to correct the errors, we would have to go back and look and could start that. Well, I just wanted to give you a chance if there's some reason you thought that would not be permissible for the judge to have that authority. That's why I was asking. Thank you. And what if, if the second appeal is affirmed, what, what does the, what, what's the import of a resentencing on the first? I think, I guess, in the ultimate range of things, you're looking at the ultimate import. I guess he could be looking at the same amount of time in a bad situation. I guess he could be looking at more time if the judge, based upon their findings, decided. But the two of them are concurrent? The two of them are concurrent, Your Honor. And so if the second is appealed, is sent back, and the, I mean, if the second is affirmed and the first is sent back, he's still got a 211 sentence. That is correct. And obviously he'll still have the special payment. Yeah, the two special sentences. From number one, he can't, he can't, he can't get out from under that. So, so if, if we affirm number two, why isn't it, does it, it almost moots number one, doesn't it? Is there any? Yeah, beyond the fact that, I mean, obviously these are all, these, these are all plain error. But, you know, as a defense attorney, I obviously think that it does reflect on the, on the fairness and integrity of, of, of what we do here when people are convicted for sentences that, that go, that go beyond what the statutory range would be in, in, in other situations. If that's just something by its nature, you're treading close to, you know, what would even be an illegal sentence. And. What was the error on the second one, you say? You think the judge was just influenced by the first one? Is that the idea? The error is that, yes, because of the procedural, the procedural errors in the first, the first one that, as the court came up with the identical sentence, which was, in fact, a guideline sentence. I mean, I have to judge that from the, it was an appropriate calculated guideline sentence and. In number two. That guideline range. However, in exercising his discretion under 3553A, you know, I would believe that the disposition of the first case in this, in these very closely related cases that are, you know, stem from the same activity. And the fact that they ended up on the identical sentence would indicate that they certainly were influenced. Did the judge say anything about how he was fashioning the sentence to match the first sentence? He did not, Your Honor. He did not say that? Okay. May it please the court. I'm Phil Coffey with the U.S. Attorney's Office here to argue on behalf of the government. And if I can, if I can skip to point three, because I think the court has put its finger on something that we, as far as the second case is concerned, the 210 month sentence, yeah, not only is it a guideline sentence, it was at the bottom of the guideline sentence. And under point three of our brief, we, I don't like to do extensive quotations, but at page 37 and 38 of our brief, the reason I did so is because I wanted the court to see how extensive Judge Fenner's findings were when he imposed the sentence. And the fact that he doesn't reference, his only reference to the prior sentence is the very last sentence that he says, and this is page 38 of our brief, very bottom, where he says, I'm going to order the sentence run concurrently or at the same time with the sentence imposed in case number 09-003, whatever. That's the only findings, and they are extensive, that his sentence under this, this particular count was influenced in any way. And why is that significant? Because as Judge Loken points out, or mentioned, this court's jurisprudence says that in this sort of situation, and we sent a 28J letter yesterday, which is the Castile case. It was a fairly recent case from this court where the identical circumstance happened. And this court co-quoted rule 52A, any error, defect, irregularly, or variance that does not affect a defendant's substantial rights. And what they basically pointed out was that in oral argument, counsel could not come up with any reason why this sentence somehow impacted his rights. Now, the argument that they're making is that somehow, some way, subconsciously, this must have affected Judge Fenner's determination. That's his only argument, and it is not supported by the record. I don't, I'm not going to read to you all of what he says, but it's in page 38 of the record, and he points out his history, the characteristics, goes through every factor, goes through every factor in the statute, and never mentions, other than saying at the very end, I'm running these sentences concurrently. So the argument that it's somehow tainted by the first supposed errors is not supported by the record. All right. So, but, now we're at the question of the Higgins case. The only difference in the Higgins case, in my view, is the fact that I think, in that case, the government did make reference to the And I don't think we did that here, but if you look at the sentencing transcript, if you look at the, the, not the sentencing transcript, but the findings of fact, the written findings of fact, and they're at page 23 of the, and these are clearly beyond a reason to be pulled out. Now, the Court starts out by saying he concludes that a conspiracy to distribute. Page 23 of what document? Of our brief. I'm sorry. 23 of our brief. I'm looking at addendum 11, which she cites calls for conclusions. Right. Not findings. And then he references all this testimony. Right. But he says, sold eight bowls to others, then cut, packaged the crack for resale to customers usually, users, minimally just two of the sellers, just list two of the numerous witnesses. And then he says, in addition, 406 grams were purchased in undercover transactions. So, you know, when you do the math, and I'm not going to do this here, at page 23 of our brief, you're talking about a finding, and I believe this is a finding, a fact beyond a reasonable doubt, that there were at least 1770 grams of crack cocaine, six times the threshold. Now, I think it's clear that, that, I mean, regardless of what he labels it, he's sitting as the trier of fact, and he's finding these facts and clearly understands that he's finding these beyond a reasonable doubt. To answer Judge Collin's question, I suppose if there's any question, any doubt, then the court could remand it. But I think that would be an exercise in futility. But you could remand. Certainly there's nothing to prevent the court, I suppose, if you are unclear about the issue, from remanding to get a specific finding that, yes, I made these findings a fact beyond a reasonable doubt. But I, but I think it's clear from the record that he, he also said, I find these witnesses to be credible. And I'm sure that, again, Judge Smith understood what the burden of proof was, that the burden of proof was beyond a reasonable doubt. Now, you can make it. So you think if the cutoff were 1740 grams, then we could say that he definitely found that? Well. Beyond a reasonable doubt? If, if, right. I mean, if the closer the, well, yeah, I, I, I think that. Or is he saying, I don't have to really decide whether all of this is true because it's at least 50? No, I think he's saying this, this is all true and I don't have to do the mathematics. I don't have, there is no need, and you, you read this earlier, Judge Carlton, there is no need to precisely ascertain the full amount of drugs involved in this conspiracy. So clearly what he's saying here is we have at least this amount. And he says every day or every other day. So we did the math using the every other day and we got to 1770. But as we point out in our brief, one of the other witnesses, and this is page 24, and he doesn't mention this, but he's talking, this, this one witness who was involved in the conspiracy, you're talking about 16 kilograms of, of crack just with this witness alone. I mean, you're talking about a massive conspiracy that, that actually probably was bigger than the one in Higgins. But in any event, you know, Mr. Shull has said there's no reason to, you know, that you can't send it back. I don't see that there'd be any point to doing that for two reasons. Number one, as I said, I think he found clearly beyond a reasonable doubt these particular findings. And the second thing is given the fact that there is no evidence, no, nothing in the record to suggest that the second sentence was in any way influenced by the prior sentence, when it's a guideline sentence, he sentences at the very end of the guidelines and he doesn't say anything like, well, you got 210 months in that prior case. And I think that's about right. He makes his decision based entirely and exclusively on the evidence in the case. So you don't really even need to get to the appeal at Goodrich one. But again, um, that's our argument, unless there are any questions. Thank you. Thank you, Mr. Shull. Have some more time, four minutes, Your Honor, for rebuttal. Um, I'm probably at about the same point as Mr. Coppi is, as if there's no further questions. I think I've argued about everything that I need to. Again, I would just like to reiterate that, it's, it's, we came to these calculations. It wasn't that the district court made that finding. And perhaps, perhaps there's not a, a great deal of cutting, cutting this edge here, but the finding is more than 50 grams. It is not 1700, in my opinion. So thank you, Judge. Thank you, counsel. Again, Mr. Shull, thank you for your Criminal Justice Act assistance. The case has been well adjudicated. Thank you. Thank you, Your Honor. Thank you. Thank you, Mr. Shull.